**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NAV-AIDS LTD., a Quebec corporation, | |
| Plaintiff, | Case No. |
| v. | |
| COBRA SYSTEMS, INC., an Illinois corporation, | |
| Defendant. | |

## **COMPLAINT**

Plaintiff Nav-Aids Ltd. ("Nav-Aids"), by its attorneys, for its Complaint against

defendant Cobra Systems, Inc. ("Cobra"), alleges and states as follows:

### **Nature of Action**

1.      This lawsuit arises out of Cobra improperly holding itself out to the United States

military as having authority to sell various ground support equipment manufactured by Nav-Aids

and specifically designated by Nav-Aids' distinctive part numbers, which Cobra knows full-well

that it lacks the authority to sell.  Cobra's knowingly deceptive conduct has resulted in Cobra

receiving awards to sell various ground support equipment manufactured by Nav-Aids and

specifically designated by Nav-Aids' distinctive part numbers.  In that regard, Cobra's conduct

has caused, and is likely in the future to cause, confusion or mistake or to deceive as to the

affiliation, connection, or association of Cobra with Nav-Aids as to the origin, sponsorship, or

approval of Cobra's ground support equipment, and otherwise constitutes statutory and common

law unfair competition and deceptive trade practices, which must be enjoined to prevent future

irreparable harm to Nav-Aids.

**Parties**

2.      Nav-Aids is a corporation organized and existing under the laws of the Province of Quebec, Canada and has its principal place of business located in the Province of Quebec, Canada. Nav-Aids is engaged in the business of, inter alia, manufacturing, distributing and selling ground support equipment to aircraft manufacturing firms, airlines, service providers and the United States military, as well as several other NATO-allied military.

3.      Cobra is a corporation organized and existing under the laws of the State of Illinois and has its principal place of business in the State of Illinois. Upon information and belief, Cobra is engaged in the business of manufacturing and distributing, inter alia, ground support equipment that it obtains from various manufacturers and wholesalers, which it in turn sells to aircraft manufacturing firms, airlines, service providers and the United States military.

4.      Non-party Nav-Aids USA, Inc. ("Nav-USA") is a dissolved Delaware corporation with a former principal place of business in Illinois. Nav-USA was engaged in the business of distributing, inter alia, ground support equipment that it obtained from various manufacturers and wholesalers, which it in turn sold to aircraft manufacturing firms, airlines, service providers and the United States military. The assets of Nav-USA were acquired by Cobra in 2002.

**Jurisdiction**

5.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(2), because the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between a citizen of a state and a citizen or subject of a foreign state. This Court also has jurisdiction under 28 U.S.C. §1331 because it involves an action arising under the Lanham Trademark Act, 15 U.S.C. §1051, et. seq.

6.      Venue in this judicial district is proper under 28 U.S.C. §1391(b)(1) because Cobra resides in this judicial district.

2

**Nav-Aids' Business**

7.      For more than fifty (50) years, Nav-Aids has designed, manufactured, and sold ground-support related products and equipment, including air data accessories and pitot and static test adapters, for most of the world's aircraft and helicopter, including civil, commuter, corporate, and military.

8.      Nav-Aids has developed a distinctive, elaborate and unique product-designation system for its products, which Nav-Aids began developing as early as 1963 and has continually maintained and refined since.  By way of example, a true and correct copy of Nav-Aids' on-line Military Aircraft Ground Support Equipment Catalog, which displays this product-designation system, is attached as **Exhibit A**.  The unique product-designation system consists of a series of alpha-numeric characters that designate (i) the type of product, (ii) the aircraft type and (iii) any size or fitting specification for that particular product.  For example, the pitot test adapter that Nav-Aids sells for the F-15 military aircraft is identified by the following designation: PSS60615M1-4-6-6 (Ex. A, p. 3.)  The "PSS" designates a pitot dual static test adapter, the "60615" designates that the adapter is for this particular aircraft, the "M1" signifies the adapter is suitable for high temperature use and the "4-6-6" refers to the fitting sizes for the hose.

9.      This product-designation system was wholly developed by Nav-Aids and is used solely by Nav-Aids.  Through the decades of use, this numbering system has become associated with Nav-Aids and its parts.  Nav-Aids' customers have come to identify these numbers as signifying ground support equipment manufactured by Nav-Aids, as opposed to any other manufacturer.  These part numbers, in other words,  identify not only the goods but the source of those goods as being Nav-Aids exclusively.

10.      Nav-Aids' distinctive product-designation system is not used by any other manufacturer or seller of ground support equipment.  It is not an industry-wide system and does

3

not serve a functional necessity for any third party. Its only use for a third party is to associate itself with Nav-Aids and to trade on Nav-Aids' goodwill.

11.     Nav-Aids sells its products directly to customers and indirectly through Nav-Aids' system of authorized distributors. The worldwide aircraft industry has come to recognize Nav-Aids' equipment as some of the safest and highest-quality anywhere.

12.     Sales to the United States military are made through a public bidding process. The Department of Defense, through the Defense Logistics Agency ("DLA"), typically generates requests for quotations in which specific products for procurement are identified through individual product codes, known as National Stock Numbers ("NSN").

13.     An NSN is a unique item-identifying series of numbers assigned to a specific item of supply. Some NSN's used by the DLA's Defense Logistics Information Service ("DLIS") identify generic products that may be manufactured by a number of companies, whereas other NSN's are uniquely and specifically tied to a particular manufacturer's part number.

14.     For example, the DLA uses NSN "4920013036915" to identify a pitot-dual static adapter test kit specifically manufactured by Nav-Aids for the F-15 military aircraft and bearing Nav-Aids' unique part number PSS60615M1-4-6-6. Accordingly, when the DLA solicits bids to supply NSN 4920013036915, any vendor who submits a bid must either be Nav-Aids itself or one of Nav-Aids' authorized distributors, who are the only companies who truthfully can represent that the part bearing Nav-Aids' part number PSS60615M1-4-6-6 is manufactured by, under the direction of, or under agreement with Nav-Aids.

15.     At no time has Nav-Aids ever authorized Cobra to sell, distribute, or market any of Nav-Aids' products or to use Nav-Aids' proprietary part numbers.

4

**Nav-Aids' Dispute with Nav-USA**

16.     For several years, Nav-USA was a distributor of Nav-Aids products pursuant to an oral distributorship agreement.

17.     In late 2000, Nav-Aids terminated the oral distribution agreement with Nav-USA after learning of misconduct by Nav-USA.  At that time, Nav-USA lost the right to sell, distribute, or market Nav-Aids' products, including the use of or reference to Nav-Aids' proprietary part numbers, to use Nav-Aids' registered trademarks, and to otherwise hold itself out as affiliated with Nav-Aids.

18.     After termination, however, Nav-USA continued to represent itself as affiliated with Nav-Aids.  Among other things, Nav-USA continued to use Nav-Aids' trademarks, registered web sites, such as navaidsltd.net, to misdirect customers of Nav-Aids to Nav-USA, and offered products for sale to the public and military using Nav-Aids' proprietary part numbers.

19.     On January 3, 2001, Nav-Aids filed a complaint against Nav-USA in the United States District Court for the Northern District of Illinois, in an action entitled *Nav-Aids Ltd. v. Nav-Aids USA, Inc.*, No. 01 C 0051 (the "Lawsuit").  In the Lawsuit, Nav-Aids asserted claims for breach of contract (Count I), violation of the Lanham Act for false designation of origin (Count II), violation of the Lanham Act for trademark dilution (Count III), violation of the Illinois Consumer Fraud and Deceptive Trade Practices Acts (Count IV), unfair competition (Count V), and cyberpiracy in violation of the Lanham Act (Count VI).

20.     On October 24, 2001, the court entered an Order in the Lawsuit [Dkt. 27] granting Nav-Aids' Motion for Partial Summary Judgment and for Preliminary Injunction.  That Order stated, in pertinent part:  "In addition, we grant [Nav-Aids'] motion for a preliminary injunction (1) preventing [Nav-USA's] continued use of an identical product designation system or

otherwise misrepresenting in any way that products, goods, and services not approved or

authorized by [Nav-Aids] are approved and authorized by [Nav-Aids] . . . ."

21.     On November 30, 2011, the court entered an Order in the Lawsuit [Dkt. 35]

converting the preliminary injunction into a permanent injunction, which stated, in pertinent part:

> The 10/24/01 entry of a preliminary injunction in favor of [Nav-Aids] and
> against [Nav-USA] shall be and hereby is adjudicated to be a permanent
> injunction permanently enjoining [Nav-USA] from:  (i) using an identical
> product designation system to that of [Nav-Aids]; (ii) misrepresenting in
> any way that products, goods, and services not approved or authorized by
> [Nav-Aids] are approved or authorized by [Nav-Aids] . . .

(A true and correct copy of the 11/30/01 Order is attached as **Exhibit B**.)

22.     Nav-USA, however, continued to violate the permanent injunction by improperly

continuing to sell products using Nav-Aids' identical part numbers.  On April 25, 2002, the court

entered an Order in the Lawsuit [Dkt. 53] granting a Motion for Rule To Show Cause that Nav-

Aids had filed, finding Nav-USA in contempt of court for violating the permanent injunction and

awarding to Nav-Aids the profits that Nav-USA received as a result of it improperly continuing

to sell products using Nav-Aids' identical part numbers.

## Cobra's Relationship with Nav-USA

23.     Upon information and belief, in August 2002, Cobra, then a creditor of Nav-USA,

acquired the assets of Nav-USA.

24.     Thereafter, Cobra commenced operations using Nav-USA's CAGE code (a

number issued by the Department of Defense to a contractor, a requirement to do business with

the Department of Defense), using Nav-USA's telephone and fax numbers, and operating out of

the same location as Nav-USA.  Cobra took over Nav-USA's products and their corresponding

part numbers for listing on Cobra's own government profile through the DLA, including part

17552486v.1

numbers that were identical to Nav-Aids' part numbers and that were the subject of the previously-entered permanent injunction, thereby continuing Nav-USA's wrongful conduct.

25.    Accordingly, on September 20, 2002, Nav-Aids filed another Motion For Rule To Show Cause, For Related Relief and For Expedited Ruling in the Lawsuit [Dkt. 109], this time against Cobra, as well as Nav-USA, seeking a declaration that Cobra was the successor in interest to Nav-USA and, therefore, subject to the previously-issued permanent injunction, which was violated by the continued improper sale of products bearing Nav-Aids' identical part numbers.  (A true and correct copy of the Motion For Rule To Show Cause, For Related Relief and For Expedited Ruling is attached as **Exhibit C**.)

26.    On November 26, 2002, the court entered an Order in the Lawsuit [Dkt. 125] denying Nav-Aids' Motion For Rule To Show Cause, For Related Relief and For Expedited Ruling.  (A true and correct copy of the 11/26/02 Order is attached as **Exhibit D**.)  The court found that Cobra was not a mere continuation of Nav-USA and therefore was not subject to the previously-entered preliminary injunction.  (Ex. D., p. 10.)  Of particular importance to the court in reaching that conclusion was that Nav-Aids "provided no evidence that Cobra has persisted in using those parts numbers that [Nav-USA] was enjoined from employing." (*Id.*)  The court, however, noted:  "Of course, if [Nav-Aids] obtains information that Cobra is also using [Nav-Aids'] identical parts numbers, it may seek appropriate relief against Cobra itself." (*Id.*)

27.    Thus, based on at least the foregoing, Cobra was aware no later than 2002 that prior to the time that Cobra acquired Nav-USA's assets, Nav-USA was no longer an authorized distributor of Nav-Aids and that Nav-USA did not possess the right to sell, distribute, or market Nav-Aids' products, including the use of or reference to Nav-Aids' proprietary part numbers.

28.     Cobra also was aware no later than 2002 that prior to the time Cobra acquired Nav-USA's assets, Nav-USA and had been permanently enjoined from "(i) using an identical product designation system to that of [Nav-Aids and from], (ii) misrepresenting in any way that products, goods, and services not approved or authorized by [Nav-Aids] are approved or authorized by [Nav-Aids]." (Ex. B.)

29.     Cobra, therefore, was aware no later than 2002 that its acquisition of Nav-USA's assets did not entitle Cobra to sell, distribute, or market Nav-Aids' products, including the use of or reference to Nav-Aids' proprietary part numbers, or to otherwise represent in any way that Cobra's products, goods, or services are manufactured, affiliated with, approved, or authorized by Nav-Aids.

### Cobra Uses Nav-Aids' Identical Part Numbers

30.     Nav-Aids recently learned that Cobra is using Nav-Aids' identical numbers. Specifically, Cobra has used Nav-Aids part numbers, and misrepresented its ability to supply Nav-Aids' products bearing those part numbers, to bid on requests for quotations from the DLA for: (i) pitot test adapters for the F-15 military aircraft; (ii) air data accessories kits for the Blackhawk/Nighthawk military helicopter; and (iii) pitot test hose assemblies for the F-18 military aircraft.

### F-15 Military Aircraft

31.     On January 31, 2014, the DLA issued a Request For Quotation Number SPE4A5-14-T-F608 for Requisition/Purchase Request No. 0051784257, a true and correct copy of which is attached as **Exhibit E**.

32.     The request sought quotations to supply "NSN/Material: 4920013036915." (*Id*., p. 4.) That NSN is for a pitot-dual static test adapter kit specifically manufactured by Nav-Aids for the F-15 military aircraft and bearing Nav-Aids' unique part number PSS60615M1-4-6-6.

8

(See Ex. A, p. 3.)  The request even further specified the part as the "NAV-AIDS LTD DBA

38002 P/N PSS60615M1-4-6-6."  (*Id*.)

33.     On March 25, 2014, Nav-Aids submitted a bid in response to the January 31,

2014 request for quotation, a true and correct copy of which is attached as **Exhibit F**.  Nav-Aids'

bid was submitted as a "Bid Without Exception," meaning that the bid strictly complies with the

requirements set forth in the request for quotation.  (Ex. F, p. 1)   By submitting the bid, Nav-

Aids represented that the pitot-dual static test adapter kit was "**manufactured by, under the**

**direction of, or under agreement with CAGE 38002** [i.e. Nav-Aids]."  (*Id*., p. 2) (emphasis

original).  It clearly was.

34.     On February 13, 2014, Cobra submitted its own "Bid Without Exception" in

response to the January 31, 2014 request for quotation, a true and correct copy of which is

attached as **Exhibit G**.  Cobra's bid amount totaled $19,610.00.  (*Id*., p. 1.)  In its bid, Cobra

described its bid as for a "Previously Approved Product" for "CAGE 70392" and represented

Cobra's ability to submit the bid as follows:

> Cobra Systems acquired the assets of Nav-USA (CAGE: 70392) in
> 2002, which was approved to make the item under P/N:
> PSS60615M1-4-6-6.

(*Id*., p. 2.)

35.     In other words, Cobra represented to DLA that it was authorized to submit a bid

to supply pitot-dual static test adapter kits specifically manufactured by Nav-Aids for the F-15

military aircraft and bearing Nav-Aids' unique part number PSS60615M1-4-6-6 because Cobra

previously acquired the assets of Nav-USA, which Nav-USA allegedly was authorized to do.

36.     Cobra's bid and the foregoing representations are false in several respects.

Preliminarily, at no time was Nav-USA ever approved "to make" these Nav-Aids products, so

neither is Cobra.  Further, at the time that Cobra acquired Nav-USA's assets, Nav-USA was no

longer an authorized distributor of Nav-Aids and no longer possessed the right to sell, distribute, or market any of Nav-Aids' products, so neither does Cobra. In fact, at the time Cobra acquired Nav-USA's assets, Nav-USA had been permanently enjoined from "(i) using an identical product designation system to that of [Nav-Aids and from]; (ii) misrepresenting in any way that products, goods, and services not approved or authorized by [Nav-Aids] are approved or authorized by [Nav-Aids]." (See Ex. B.) Cobra was well aware of each of the foregoing as of 2002, and certainly well-prior to making these false representations in its bid.

37.     Thus, Cobra does not possess the legal right to supply pitot-dual static test adapter products specifically manufactured by Nav-Aids for the F-15 military aircraft and bearing Nav-Aids' unique part number PSS60615M1-4-6-6, or any of Nav-Aids' products for that matter, or otherwise to hold itself out as being in any way affiliated with Nav-Aids.

38.     Notwithstanding the foregoing, DLA awarded the contract to Cobra.

### Blackhawk/Nighthawk Military Helicopter

39.     On May 2, 2014, DLA issued a Request For Quotation Number SPE4A6-14-T-BE04 for Requisition/Purchase Request No. 0053302280, a true and correct copy of which is attached as **Exhibit H**.

40.     The request sought quotations to supply "NSN/Material: 4920014760142." (*Id.*, p. 4.) That NSN is for an air data accessory kit specifically manufactured by Nav-Aids for the Blackhawk/Nighthawk military helicopter and bearing Nav-Aids' unique part number ADA60A-612. (*Id.*) (A true and correct copy of Nav-Aids' on-line Helicopter Ground Support Equipment Catalog is attached as **Exhibit I**, at page 2 of which the instant part number appears.)

41.     On May 6, 2014, Nav-Aids submitted a bid in response to the May 2, 2014 request for quotation, a true and correct copy of which is attached as **Exhibit J**. Nav-Aids' bid

was submitted as a "Bid Without Exception," meaning that the bid strictly complies with the requirements set forth in the request for quotation. (Ex. J, p. 1) Again, by submitting the bid, Nav-Aids represented that the air data accessory kit was "**manufactured by, under the direction of, or under agreement with CAGE 38002** [i.e. Nav-Aids]." (*Id*., p. 2) (emphasis supplied). It clearly was.

42.     On May 15, 2014, Cobra submitted its own "Bid Without Exception" in response to the May 2, 2014 request for quotation, a true and correct copy of which is attached as **<u>Exhibit K</u>**. Cobra's bid amount totaled $32,450.00. (*Id*., p. 1.) In its bid, Cobra again described its bid as for a "Previously Approved Product" for "CAGE 70392" and represented Cobra's ability to submit the bid as follows:

> Cobra Systems acquired [sic] the assets of Nav-USA (CAGE: 70392) in 2002, which was approved to make the item. Cobra Systems is also approved to make the accessory kits for the Army.

(*Id*., pp. 1-2.)

43.     In other words, Cobra represented to DLA that it was authorized to submit a bid to supply air data accessory kits specifically manufactured by Nav-Aids for the Blackhawk/Nighthawk military helicopter and bearing Nav-Aids' unique part number ADA-60A-612 because Cobra previously acquired the assets of Nav-USA, which Nav-USA was authorized to do.

44.     Cobra's bid and the foregoing representations are false in several respects. Preliminarily, at no time was Nav-USA ever approved "to make" this part, so neither is Cobra. Further, at the time that Cobra acquired Nav-USA's assets, Nav-USA was no longer an authorized distributor of Nav-Aids and no longer possessed the right to sell, distribute, or market any of Nav-Aids' products, so neither does Cobra. In fact, at the time Cobra acquired Nav-USA's assets, Nav-USA had been permanently enjoined from "(i) using an identical product

designation system to that of [Nav-Aids and from]; (ii) misrepresenting in any way that products, goods, and services not approved or authorized by [Nav-Aids] are approved or authorized by [Nav-Aids]." (See Ex. B.) Cobra was well aware of each of the foregoing as of 2002, and certainly well-prior to making these false representations in its bid.

45.     Thus, Cobra does not possess the legal right to supply air data accessory kits specifically manufactured by Nav-Aids for the Blackhawk/Nighthawk military helicopter and bearing Nav-Aids' unique part number ADA-60A-612, or of any Nav-Aids' products for that matter, or otherwise to hold itself out as being in any way affiliated with Nav-Aids.

46.     Notwithstanding the foregoing, DLA awarded the contract to Cobra.

**F-18 Military Aircraft**

47.     On April 28, 2014, DLA issued a Request For Quotation Number SPE4A5-14-T-U509 for Requisition/Purchase Request No. 0053205180, a true and correct copy of which is attached as **Exhibit L**.

48.     The request sought quotations to supply "NSN/Material: 4920013343020." (*Id.*, p. 4.) That NSN is for a pitot test hose assembly for the F-18 military aircraft and bearing Nav-Aids' unique part number F18-7270C. (A true and correct copy of Nav-Aids' Air Data Accessories Kit manual for this aircraft is attached as **Exhibit M**, at page 2 of which the instant part number appears. Hose assemblies are not specifically listed on Nav-Aids' on-line catalog. See Ex. A, p. 3)

49.     On May 6, 2014, Nav-Aids submitted a bid in response to the April 28, 2014 request for quotation, a true and correct copy of which is attached as **Exhibit N**. Nav-Aids' bid was submitted as a "Bid Without Exception," meaning that the bid strictly complies with the requirements set forth in the request for quotation. (Ex. N, p. 1) Again, by submitting the bid,

Nav-Aids represented that the pitot test hose assembly was "manufactured by, under the direction of, or under agreement with CAGE 38002 [i.e. Nav-Aids]." (*Id.*, p. 2.) It clearly was.

50.     On April 29, 2014, Cobra submitted its own "Bid Without Exception" in response to the April 28, 2014 request for quotation, a true and correct copy of which is attached as **Exhibit O**. Cobra's bid amount totaled $650.00. (*Id.*, p. 1.) In its bid, Cobra again described its bid as for a "Previously Approved Product" for "CAGE 70392" and represented Cobra's ability to submit the bid as follows:

> Cobra Systems acquired the assets of Nav-USA (CAGE: 70392) in 2002, which was approved to make the item under P/N: F18-7270C.

(*Id.*)

51.     In other words, Cobra represented to DLA that it was authorized to submit a bid to supply pitot test hose assemblies for the F-18 military aircraft and bearing Nav-Aids' unique part number F18-7270C because Cobra previously acquired the assets of Nav-USA, which Nav-USA was authorized to do.

52.     Cobra's bid and the foregoing representations are false in several respects. Preliminarily, at no time was Nav-USA ever approved "to make" this part, so neither is Cobra. Further, at the time that Cobra acquired Nav-USA's assets, Nav-USA was no longer an authorized distributor of Nav-Aids and no longer possessed the right to sell, distribute, or market any of Nav-Aids' products, so neither does Cobra. In fact, at the time Cobra acquired Nav-USA's assets, Nav-USA and had been permanently enjoined from "(i) using an identical product designation system to that of [Nav-Aids and from]; misrepresenting in any way that products, goods, and services not approved or authorized by [Nav-Aids] are approved or authorized by [Nav-Aids]." (See Ex. B.) Cobra was well aware of each of the foregoing as of 2002, and certainly well-prior to making these false representations in its bid.

13

53.     Thus, Cobra does not possess the legal right to supply pitot test hose assemblies for the F-18 military aircraft and bearing Nav-Aids' unique part number F18-7270C, or any Nav-Aids' products for that matter, or otherwise to hold itself out as being in any way affiliated with Nav-Aids.

54.     Notwithstanding the foregoing, DLA awarded the contract to Cobra.

55.     Nav-Aids has filed bid-protests with the respective contracting officers of the U.S. military for the contracts awarded to Cobra for the F-15 military aircraft, Blackhawk/Nighthawk military helicopter, and F-18 military aircraft, which protests are pending.

**Irreparable Harm to Nav-Aids**

56.     By submitting bids on the requests for quotations from the DLA for ground support equipment for the F-15 military aircraft, Blackhawk/Nighthawk military helicopter, and F-18 military aircraft alleged above, Cobra was falsely and unlawfully holding itself out as being somehow affiliated, connected, or associated with Nav-Aids and that those products being marketed and sold under Nav-Aids' identical part numbers were manufactured by, under the direction of, or under agreement with Nav-Aids.

57.     Cobra is not affiliated with or authorized to represent itself as affiliated with Nav-Aids, including any right to offer for sale products identified as manufactured by Nav-Aids.

58.     Cobra does not possess any products manufactured by Nav-Aids. Cobra, therefore, in violation of the requests for quotation, provided, or intends to provide, the government with ground support equipment that is not manufactured by, under the direction of, or under agreement with Nav-Aids.

59.     In addition, Cobra's bids were below the price for which Nav-Aids offers its products for sale to its customers and to its distributors. Therefore, it is implausible that Cobra was able to otherwise acquire legitimate Nav-Aids products to fulfill the requests.

14

60.     Any malfunction or failure to perform by these products will result in a diminution in Nav-Aids' goodwill and reputation.

61.     Because Cobra's bids were substantially below the cost of the Nav-Aids' products, Cobra was able to win bids that would otherwise have been won by Nav-Aids or one of Nav-Aids' authorized distributors.

62.     Nav-Aids' goodwill and reputation has been created at the expense of substantial resources over its more than fifty (50) years of existence.  In addition to the lost profits Nav-Aids would have been entitled through the lost bids identified above, as a direct consequence of Cobra's actions, Nav-Aids is threatened with harm to its goodwill and reputation.

<u>**Count I**</u>
**(False Designation of Origin --**
**§ 43(a) of the Lanham Trademark Act.)**

63.     Nav-Aids incorporates by reference paragraphs 1 through 62, as though fully set forth herein.

64.     Nav-Aids uses distinctive and protectable part numbers for the products that it manufactures and sells.  Those part numbers are specifically identified with Nav-Aids and are not used by any other manufacturer or seller of ground support equipment.

65.     Indeed, many NSN's used by the DLA are specifically assigned to particular ground support equipment manufactured by Nav-Aids and bearing Nav-Aids' unique part numbers.

66.     Cobra is using Nav-Aids' part numbers to bid on requests for quotations from the DLA.  By using Nav-Aids' part numbers Cobra is falsely representing to the DLA, the government, and others, that Cobra is affiliated, connected or otherwise associated with Nav-Aids.

17552486v.1

67.     Cobra also is improperly suggesting that its prior acquisition of Nav-USA's assets, after Nav-USA had already been terminated as a distributor of Nav-Aids and had been permanently enjoined from using Nav-Aids' identical part numbers and from representing in any way that Nav-USA's products are manufactured, affiliated with, approved, or authorized by Nav-Aids,  somehow authorizes Cobra to sell ground support equipment manufactured by Nav-Aids and to use Nav-Aids' identical part numbers.

68.     Further, because Cobra is not an authorized Nav-Aids distributor and is not authorized by Nav-Aids to sell Nav-Aids' products, by selling ground support equipment using Nav-Aids' identical part numbers, Cobra is passing off its own products, or those of another manufacture, as Nav-Aids' products.

69.     Cobra's conduct and its false designation of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact have caused and/or are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Cobra with Nav-Aids.

70.     The foregoing constitutes unfair competition and false representation and designation of origin in violation of Section 43(a) of the Lanham Trademark Act (15 U.S.C. § 1125(a)), as amended.

71.     As a result of the aforesaid acts by Cobra, Nav-Aids has suffered and continues to suffer substantial damages and irreparable injury.  Nav-Aids has no adequate remedy at law and, unless Cobra is restrained and enjoined by this Court, said acts will continue, thereby causing further damage and irreparable injury to Nav-Aids, and to its goodwill and business reputation.

17552486v.1

## COUNT II
### (Illinois Uniform Deceptive Trade Practices Act --
### 815 ILCS 510/1)

72.     Nav-Aids incorporates by reference paragraphs 1 through 69, as though fully set forth herein.

73.     Cobra's improper conduct, including, *inter alia*, Cobra's: (a) use of Nav-Aids' distinctive and protectable part numbers; (b) improper suggestion that Cobra's prior acquisition of Nav-USA's assets somehow authorizes Cobra to sell ground support equipment manufactured by Nav-Aids and to use Nav-Aids' identical part numbers; and (c) passing off its own products, or those of another manufacture, as Nav-Aids' products has caused, and is likely to cause in the future, confusion or misunderstanding as to the source, sponsorship, approval, or certification of Cobra's goods and services with those of Nav-Aids.

74.     Additionally, such improper conduct by Cobra has caused and/or is likely to cause confusion or misunderstanding as to the affiliation, connection, or association with or certification by Nav-Aids of Cobra and Cobra's goods and services.

75.     By virtue of the foregoing, Cobra has been engaged, and is engaged, in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq*.

76.     As a further result of the aforesaid acts by Cobra, Nav-Aids has been and is likely to continue to be damaged.  Nav-Aids has no adequate remedy at law and unless Cobra is enjoined by this Court, said acts will continue, thereby continuing to deceive the public and U.S. Government, and continuing to cause Nav-Aids immediate and irreparable damage.

17552486v.1

## COUNT III
### (Consumer Fraud and Deceptive Trade Practices Acts -- 815 ILCS 505/1)

77.     Nav-Aids incorporates by reference paragraphs 72 through 76, as though fully set forth herein.

78.     By virtue of the foregoing, Cobra has been engaged, and is engaged, in consumer fraud and deceptive practices within the meaning of Illinois' Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1, *et seq*.

79.     Nav-Aids has been and is likely to continue to be damaged as a result of the consumer fraud and deceptive practices engaged in by Cobra.

80.     As a further result of the aforesaid acts by Cobra, Nav-Aids has been and is likely to continue to be damaged for which Nav-Aids is entitled to recover actual damages as well as injunctive relief.  Unless Cobra is enjoined by this Court, said acts will continue, thereby continuing to deceive the public and U.S. Government, and continuing to cause Nav-Aids immediate and irreparable damage.

## COUNT IV)
### (Common Law Unfair Competition)

81.     Nav-Aids incorporates by reference paragraphs 1 through 69, as though fully set forth herein.

82.     Cobra's improper conduct, including, *inter alia*, Cobra's: (a) use of Nav-Aids' distinctive and protectable part numbers; (b) improper suggestion that Cobra's prior acquisition of Nav-USA's assets somehow authorizes Cobra to sell ground support equipment manufactured by Nav-Aids and to use Nav-Aids' identical part numbers; and (c) passing off its own products, or those of another manufacturer, as Nav-Aids' products has caused, and is likely to cause in the

17552486v.1

future, confusion or misunderstanding as to the source, sponsorship, approval, or certification of Cobra's goods and services with those of Nav-Aids.

83.     By virtue of the foregoing, Cobra has been engaged, and is engaged, in conduct that has caused confusion and/or is likely to cause consumers to be deceived as to the origin and sponsorship of the goods and services offered by Cobra.  Cobra is thus engaged in unfair competition in violation of Nav-Aids' common law rights.

84.     As a result of the aforesaid acts by Cobra, Nav-Aids has suffered and continues to suffer substantial damages and irreparable injury.  Nav-Aids has no adequate remedy at law and, unless Cobra is restrained and enjoined by this Court, said acts will continue, thereby causing further damage and irreparable injury to Nav-Aids, and to its goodwill and business reputation.

WHEREFORE, Nav-Aids respectfully requests:

1.     That this Court enter judgment in its favor and against Cobra, in an amount to be determined at trial, plus statutory interest, costs of suit and any other relief that this Court deems just and equitable.

2.     That Cobra and its employees, agents, representatives, attorneys and all persons acting or claiming to act on its behalf or under its direction or authority, and all persons acting in concert or in participation with it, be preliminarily and permanently enjoined from:

(a)     using Nav-Aids' identical part numbers in connection with the offering for sale and the selling of any goods and services;

(b)     representing in any manner, or by any method whatsoever, that Cobra's prior acquisition of Nav-USA's assets authorizes Cobra to sell goods manufactured by Nav-Aids and to use Nav-Aids' identical part numbers;

19

(c)     representing in any manner, or by any method whatsoever, including, without limitation, use of Nav-Aids' identical part numbers, that any goods or services not sponsored, manufactured, approved or authorized by Nav-Aids are sponsored, manufactured, approved or authorized by Nav-Aids or from otherwise taking any action likely to cause confusion, mistake, or deception as to the origin, approval, sponsorship, or certification of Cobra's goods or services by Nav-Aids; and

(d)     representing in any manner or by any method whatsoever, including, without limitation, use of Nav-Aids' identical part numbers, that any business conducted by Cobra is affiliated, connected or otherwise associated with Nav-Aids, or from otherwise taking any action likely to cause confusion, mistake, or deception on the part of the public as to the affiliation, connection, or other association of Cobra's business with Nav-Aids.

3.     That Nav-Aids be granted an accounting for damages and for all the profits earned by Cobra together with those profits lost by Nav-Aids due to the actions of Cobra complained of herein, pursuant to 15 U.S.C. §1117(a).

4.     That Nav-Aids be awarded its actual damages.

5.     That the damages assessed against Cobra be trebled pursuant to 15 U.S.C. §1117(a).

6.     That Nav-Aids be granted an award for damages due to the injury to its business reputation and the loss of its good will by reasons of Cobra's offer to sell and providing of products not manufactured or sold to it by Nav-Aids.

7.     That Nav-Aids be awarded its costs and disbursements in this action, including its reasonable attorneys' fees, pursuant to 15 U.S.C. §1117(b), 815 ILCS 510/3, and 810 ILCS 505/10a.

17552486v.1

8.      That Nav-Aids have such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Nav-Aids demands a trial by jury.


Respectfully submitted,

NAV-AIDS LTD.

By: */s/ Mark L. Johnson*
         One of Its Attorneys


Mark L. Johnson (6204488) (majohnson@seyfarth.com)
Marcus L. Mintz (6290255) (mmintz@seyfarth.com)
Seyfarth Shaw LLP
131 S. Dearborn Street
Suite 2400
Chicago, Illinois  60603
312-460-5000

17552486v.1